UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| TYRA JOHNSON, | : | Civil No. 1:17-CV-01385 |
|---|---|---|
| Plaintiffs, | : | |
| v. | : | (Judge Kane) |
| | : | (Magistrate Judge Saporito) |
| UNITED STATES POSTAL SERVICE, | : | |
| Defendant. | : | |

FILED
WILKES BARRE
JUL 15 2019
PER ＭＳ
DEPUTY CLERK

**MEMORANDUM**

This matter is before the court on the defendant's motion for a protective order. (Doc. 35). The issues have been briefed and the motion is ripe for disposition. For the reasons set forth herein, we will grant the motion.

## I.   *Factual Background*

The plaintiff Tyra Johnson ("Johnson") filed a complaint against the United States Postal Service ("USPS") alleging violations of the Family and Medical Leave Act ("FMLA") after she was terminated from her employment with the USPS. (Doc. 1). Johnson was hired by the USPS on June 29, 2013, as a Mail Handler Assistant ("MHA") at the Harrisburg Processing and Distribution Center. MHAs are temporary

employees who serve in terms of 360 calendar days. As permanent Mail Handler positions become available, senior MHAs can convert to permanent employees subject to the successful completion of a 90-day probationary period. Johnson became eligible and converted to a permanent Mail Handler on May 30, 2015.

Shortly before that conversion, Johnson notified USPS that she had a high-risk pregnancy and would require a light work duty assignment, which the USPS provided. The parties disagree about the subsequent facts in the case. Johnson claims that after she converted to a permanent status, the USPS refused to provide her with accommodations as it had done in the past. She further claims that the USPS forced her to take an unpaid leave of absence, unless she could return to work without restrictions. The USPS argues that it provided Johnson with the requested accommodations and approved her FMLA case once she produced the requisite medical documentation. Both parties agree that Johnson was separated from the USPS in August 2015. Johnson contends that she was terminated by the USPS because of her FMLA requests. The USPS maintains that it declined to retain Johnson after

the 90-day probationary period because of performance and disciplinary problems.

Johnson seeks deposition testimony from the USPS under Fed. R. Civ. P. 30(b)(6) regarding the employment records of all employees at the Harrisburg Processing and Distribution Center "at any time in the past five years" who converted to career employment. The USPS estimates the number of employees who fit into this category to be "at least 130, and perhaps as many as 337." (Doc. 35 ¶4). The USPS argues that this discovery request is "overly broad, seeking irrelevant information, and imposing a burden disproportional to the needs of the case." (Doc. 36, at 4). It has filed a motion for a protective order (Doc. 35) asking the Court to limit the scope of discovery to the fifteen MHAs who converted at the same time as Johnson.

## II. *Legal Standards*

The scope of discovery in federal court is governed by Federal Rule of Civil Procedure 26. Rule 26 is to be construed liberally. *See Tele-Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981)(citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351(1978)). Rule 26 permits parties to "obtain discovery regarding any nonprivileged mater

that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

A motion for a protective order is governed by Rule 26(c) of the Federal Rules of Civil Procedure. Rule 26(c) permits "a party or any person from whom discovery is sought to move for a protective order limiting the scope of discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action."[1] Fed. R. Civ. P. 26(c)(1). Accordingly, the Court may, for "good cause," issue a protective order to shield a party "from annoyance, embarrassment, oppression, or undue burden or expense." *Id.; see also Pansy v. Borough of Stroudsburg*, 24 F.3d 772, 786 (3d Cir. 1994) ("All such orders are intended to offer litigants a measure of privacy, while

---

[1] The parties participated in telephone conferences with the court on March 29, 2019, May 2, 2019, and July 10, 2019, in an effort to resolve the dispute without court action. Unfortunately, the parties were unable to resolve the scope of this discovery dispute.

balancing against this privacy interest the public's right to obtain information concerning judicial proceedings.").

The moving party "must demonstrate that 'good cause' exists for the order." *Id.* "Good cause" means "that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (quoting *Pansy*, 24 F.3d at 786). Consequently, "broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not support a good cause showing." *Id.* Courts considering whether "good cause" exists look to various factors, including but not limited to:

1. Whether disclosure will violate any privacy interests;

2. Whether the information is being sought for a legitimate purpose or for an improper purpose;

3. Whether disclosure of the information will cause a party embarrassment;

4. Whether confidentiality is being sought over information important to public health and safety;

5. Whether the sharing of information among litigants will promote fairness and efficiency;

6. Whether a party benefitting from the order of confidentiality is a public entity or official; and

7. Whether the case involves issues important to the public.

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *see also Pansy*, 23 F.3d at 786 ("Protective orders over discovery materials and orders of confidentiality over matters relating to other stages of litigation have comparable features and raise similar public policy concerns.") Finally, the District Court "should articulate on the record findings supporting its decision to grant or deny a protective order." *Avandia*, 924 F.3d at 672.

## III. Discussion

We have considered the enumerated factors, as well as any others that may be relevant to balancing the interests of both parties. *Pansy*, 23 F.3d at 778 ("In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process."). Notably, four of the enumerated factors are not relevant to this analysis. First, no relevant privacy interests are involved in this litigation. Second, the defendant does not stand to face embarrassment as a result of disclosure. Third, the information sought is of no relevance to public

6

health and safety. Finally, while the FMLA is generally relevant to the public interest, the large number of similar matters pending throughout the United States ostensibly diminishes the relative importance of this particular matter to the public interest.

Regarding relevant factors for the Court to consider, first, the disclosure sought by Johnson is for a legitimate comparative purpose. As Johnson correctly points out in her brief, (Doc. 37, at 6), the Third Circuit has recognized the relevance of comparator evidence to employment discrimination disputes. *See Abrams v. Lightolier, Inc.*, 50 F.3d 1204 (3d Cir. 1995) (finding evidence of how the employer treated other members of the protected class to be probative of whether the employer harbored discriminatory intent towards the plaintiff.).[2] Thus, we agree with the proposition that employment records and documents pertaining to employees who converted to permanent status are relevant comparator evidence. However, based upon the affidavits submitted with the

---

[2] *See also Becker v. ARCO Chem. Co.*, 207 F.3d 176, 194 n.8 (3d Cir. 2000)("[A]s a general rule, evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible under Federal Rules of Evidence to establish whether a defendant's employment action against an employee was motivated by invidious discrimination.").

defendant's submissions, we find that the requested five-year time frame is unduly burdensome. Nevertheless, we find that Johnson's discovery request, subject to a reasonable limitation to its scope, serves a legitimate purpose for her FMLA claim under the *Pansy* factors.

Next, regarding whether the party seeking a protective order is a public entity, the USPS is a public entity for purposes of this analysis because it is an independent federal agency created by the laws of Congress. Consequently, its status as a public entity should weigh in favor of disclosure.

Finally, regarding whether the sharing of information among litigants will promote fairness and efficiency, according to USPS, the potential universe of employees subject to Johnson's discovery requests can amount to as many as 337. USPS argues that complying with the requests would require over 60 hours of additional work. When presented with these arguments, we find that Johnson's Rule 30(b)(6) requests exceed the bounds of fairness and efficiency. Johnson has referenced the statements of a single supervisor, MDO Jeffery Hotchkiss, in her brief opposing the motion. (Doc. 37, at 3). We find that the more relevant inquiry involves the statements of a single supervisor. Sharing

the information requested by Johnson is not proportional to the needs of the case.

In light of the factors articulated by the court in *Pansy*, it appears that, by virtue of its high volume, Johnson's discovery request is disproportionate to the needs of the case. While comparator evidence is undoubtedly relevant to establishing a *prima facie* case of employment discrimination, comparator evidence cannot simply be a fishing expedition. Rather, the goal of Johnson's discovery request should be to identify "similarly-situated employees." The Third Circuit has previously observed that:

> [I]n order for employees to be deemed similarly situated...the individuals with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Chase v. Frontier Commc'ns Corp.*, 361 F. Supp. 3d 423, 436-37 (M.D. Pa. 2019).

In the exercise of our discretion to "[limit] the scope of disclosure or discovery to certain matters" Fed. R. Civ. P. 26(c)(1)(D), we will limit the

scope of discovery to (1) employees who worked under MDO Hotchkiss; (2) employees who went through the ninety-day probationary period; and (3) employees who fall into both categories between April 1, 2015, and January 1, 2016. As Johnson correctly points out in her brief, "if a specific supervisor had the discriminatory animus that led to the discrimination, it makes sense to limit the discovery of comparators to individuals who worked under that supervisor." (Doc. 37, at 7). Here, Johnson has submitted documentary evidence of MDO Hotchkiss's alleged discrimination against her. Accordingly, it would be reasonable for discovery to be limited exclusively to employees working under MDO Hotchkiss. Next, Johnson also correctly points out that employees who were subject to a ninety-day probationary period were not subject to the protections of the various collective bargaining agreements. Considering this and the deposition testimony from MDO Hotchkiss stating that employees were universally held to a standard of perfection throughout their probationary periods, it is reasonable to include within the scope of discovery employees who worked through ninety-day probationary periods and were similarly-held to a standard of "perfection." As previously discussed, five years of data collection is simply

disproportional to the needs of this case. Additionally, the probationary policy changed mid-way through 2016. Therefore, it may be problematic to compare employees from before the policy change to those working after it.

An appropriate order follows.

*Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: July 15, 2019